# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| In re:<br><br>    Barbara A. Wigley,<br><br>        Debtor. | Bankruptcy Case No. 16-43707 WJF<br><br>Chapter 11 |
| Barbara A. Wigley,<br><br>    Plaintiff,<br><br>      vs.<br><br>Lariat Companies, Inc.,<br><br>    Defendant. | Adversary No. _____ |

## COMPLAINT

Barbara A. Wigley (the "Debtor") for her Complaint for Declaratory Relief in the above-captioned adversary proceeding states and alleges as follows:

### THE PARTIES

1.    Debtor is the debtor in the above-referenced bankruptcy case (the "Bankruptcy Case"), which is pending in this Court.

2.    Defendant Lariat Companies, Inc. ("Defendant") is a Minnesota corporation with its principal executive office located at 8443 Joiner Way, City of Eden Prairie, Minnesota.

### JURISDICTION AND VENUE

3.    This Court has subject matter jurisdiction over this adversary proceeding pursuant 28 U.S.C. §§ 157 and 1334.

4.    This adversary proceeding involves matters arising out of Debtor's chapter 11 case.

5. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## NATURE OF ACTION

6. Debtor brings this adversary proceeding pursuant to 11 U.S.C. §105(a), 28 U.S.C. §§ 2201 and 2202, and Fed. R. Bankr. P. 7065 to seek declaratory and injunctive relief which would, among other things, bar Defendant from taking collection actions against Debtor.

## FACTUAL BACKGROUND

### A. Background Facts Related to Origin of Defendant's Claim

7. On or about September 28, 2008, the Baja Sol Cantina EP, LLC ("Baja Sol") entered into a Franchise Agreement with Baja Sol Restaurant Group for the purpose of opening and operating a restaurant.

8. On October 8, 2008, Baja Sol entered into a Lease Agreement (as amended, the "Lease") with Defendant for the use of commercial property located in Eden Prairie, Minnesota as the restaurant location for a ten-year term.

9. On October 9, 2008, Debtor's spouse Michael Wigley executed a Personal Guaranty ("Guaranty") of Baja Sol's obligations under the Lease.

10. In July of 2010, and with operations failing to meet anticipated targets, Baja Sol turned over operations of the restaurant to the franchisor. Shortly thereafter, the Franchisor ceased operation of the franchise restaurant and also vacated the Property.

11. On or about October 28, 2010, Defendant initiated a civil lawsuit in the Hennepin County District Court against Baja Sol and Mr. Wigley to enforce the Lease and the Guaranty (the "First State Court Action").

12. On June 20, 2011, the District Court entered an order granting Defendant's motion for summary judgment in the First State Court Action.

13. On August 2, 2011, the District Court docketed judgment in the amount of $2,398,331.12, against the Baja Sol and Mr. Wigley jointly and severally in connection with the First State Court Action.

14. In November 2011, Defendant and two other creditors commenced a separate action against Debtor in the Hennepin County District Court (the "Fraudulent Transfer Action"), alleging that certain transfers of property from Mr. Wigley to Debtor in 2009 and 2010 were fraudulent transfers under Minnesota's version of the Uniform Fraudulent Transfer Act then in effect (Minn. Stat. §§ 513.41 – 513.51 ("MUFTA")).

15. After Mr. Wigley's settlement of the claims with the other plaintiff-creditors in 2012, those parties dismissed their claims in the Fraudulent Transfer Action against Debtor, and Defendant continued the Fraudulent Transfer Action as the sole plaintiff.

16. On June 15, 2012, Defendant filed a motion to join Mr. Wigley as a named defendant in the Fraudulent Transfer Action, and on August 8, 2012, that motion was granted.

17. A court trial was held on July 22 and July 23, 2013 in the Fraudulent Transfer Action, and on October 23, 2013 the District Court entered its Findings of Fact, Conclusions of Law, and Order for Judgment. On November 22, 2013, judgment was docketed against Debtor and Mr. Wigley jointly and severally in the amount of $802,302.72 in connection with the Findings of Fact, Conclusions of Law, and Order for Judgment issued by the District Court in the Fraudulent Transfer Action.

**B. Mr. Wigley's Chapter 11 Case**

18. On February 10, 2014, Mr. Wigley filed a voluntary petition with this Court, thereby commencing the chapter 11 case captioned *In re Michael Robert Wigley*, Case No. 14-40541.

19. On June 3, 2014, Defendant filed a proof of claim in Mr. Wigley's bankruptcy case, by which it asserted a claim in the amount of $1,734,539.00. Defendant's calculation of the claim stated in its proof of claim in Mr. Wigley's bankruptcy included the following:

   a. Unpaid rent, common area maintenance, and late fees in the amount of $172,243.11, as awarded by the state court, plus $54,844.00 in pre-petition interest;

   b. Future rents, as limited by operation of 11 U.S.C. § 502(b)(6), in the amount of $379,111.00;

   c. Attorneys' fees, costs, and disbursements, including interest, in the amount of $185,829;

   d. Amortized obligations left unrecovered in the amount of $123,750.00; and

   e. The outstanding balance of the judgment entered in the Fraudulent Transfer Action, plus pre-petition interest, in the total amount of $818,761.00.

20. On July 3, 2014, Mr. Wigley filed his objection to Defendant's claim.

21. On November 10, 2014, this Court entered an order determining that Defendant had an allowed claim in the amount of $455,272.93 in connection with Mr. Wigley's bankruptcy.

22. Defendant appealed the Court's order regarding Mr. Wigley's claim objection, and the Bankruptcy Appellate Panel for the Eighth Circuit ("BAP"), reversed the order, in part, and remanded for further proceedings.

23. On August 1, 2016, this Court entered a final order determining that Defendant had an allowed claim in the amount of $553,271.58 in connection with Mr. Wigley's bankruptcy.

24. That portion of Defendant's claim against Mr. Wigley that was based on the judgment entered in the Fraudulent Transfer Action, as stated in Defendant's proof of claim, was never disallowed.

25. By order dated February 18, 2016, this Court confirmed Mr. Wigley's Fourth Modified Plan of Reorganization, which provided, in part, for payment of general unsecured claims (including Defendant) in full, together with post-petition interest at the rate of 6% per annum.

26. On August 24, 2016, Mr. Wigley mailed a check in the amount of $637,581.07 to Defendant in full and final satisfaction of Defendant's claim against Mr. Wigley.

27. On September 22, 2016, this Court granted Mr. Wigley's discharge.

### C. Debtor's Chapter 11 Case

28. On December 19, 2016, Debtor filed the petition commencing the above-captioned chapter 11 case.

29. On February 20, 2017, Defendant filed Claim No. 4 in this case, asserting a claim against Debtor in the amount of $1,734,539.00.

30. On April 18, 2017, Debtor filed her objection to Defendant's claim [Docket No. 86].

31. On February 9, 2018, this Court entered an order determining that Defendant had an allowed claim against Debtor in the amount of $308,805.00 [Docket No. 193].

32. On November 9, 2018, the BAP reversed the Court's order and determined that Defendant had no allowable claim [Docket No. 252].

33. On March 9, 2020, the Eighth Circuit Court of Appeals reversed the BAP, and remanded the matter to this Court to enter an order allowing Defendant's claim in the amount of $308,805.00 [Docket No. 277].

34. On March 21, 2018, the Debtor filed her Amended Plan of Reorganization (the "Plan") [Docket No. 209], a true and correct copy of which is attached as Exhibit A.

35. On April 20, 2018, the Court confirmed the Plan [Docket No. 217].

36. The Plan provides, in relevant part, as follows:

Class 1 claims, to the extent allowed pursuant to Section 502 of the Bankruptcy Code, shall be paid in full, with post-petition interest calculated at the rate of five percent (5.0%) per annum, on the Effective Date; provided, however, that:

1) To the extent that a disputed claim is not subject to a Final Order on the Effective Date:

a) The allowed claim by the bankruptcy court by order dated February 9, 2018, shall be paid in full on the Effective Date, or an appropriate, court-approved bond per the Federal Rules of Bankruptcy Procedure shall be posted and its terms followed, without prejudice to a claimant's right to receive additional payments on adjudication of the Disputed Amount;

b) Any additional amount allowed by order of the Bankruptcy Court or any appellate court shall be paid in full fifteen (15) calendar days after said order, and, conversely, any reduction in the amount of the allowed claim by a federal court shall be paid back to the Debtor fifteen (15) calendar days after said order; and any reduction in the event of a reversal or modification of a Minnesota state court judgment shall be governed by Minnesota law and procedure; and

c) Any Disputed Amount shall not be discharged prior to entry of a Final Order.

d) With respect to the Lariat claim, Lariat is enjoined from collection activity against the Debtor unless there is a payment default to it under this Plan. If there is a payment default, Lariat shall file an affidavit with this court and the Debtor will be allowed three (3) business days to file a response.

Exhibit A, Section II(A)(1).

6

37. Based on this Court's February 9, 2018 order, after confirmation of the Plan, Debtor paid Defendant $308,805.00, plus allowable interest.

38. After the BAP decision, Defendant refunded this amount to Debtor.

39. Finally, on March 24, 2020, after the 8th Circuit's reversal of the BAP decision, Debtor paid Defendant the sum of $361,249.07, which was the total of Defendant's allowed claim plus allowable interest.

40. Debtor is not in default of any payment obligations under the Plan.

### D. Pending Appeals

41. As of the date hereof, there are appeals pending in front of both the BAP and the Minnesota Court of Appeals.

42. The BAP is considering Debtor's appeal of this Court's determination that the judgment entered in Fraudulent Transfer Action is non-dischargeable pursuant to 11 U.S.C. § 523.

43. Oral argument in front of the BAP is currently scheduled for August 7, 2020.

44. The Minnesota Court of Appeals is considering Debtor's appeal of the judgment entered in the Fraudulent Transfer Action on various grounds, which appeal asks the Court of Appeals to address, among other issues, the reversible errors committed by the District Court when it failed to account for the fact that all of the alleged fraudulent transfers were of funds that were all paid to Mr. Wigley's creditors and further failed to account for the fact that its judgment against Debtor amounts to an impermissible windfall to Defendant.

### E. Defendant's Improper Collection Efforts

45. To date, no payment default under Debtor's bankruptcy plan has occurred, nor been alleged.

46. As indicated above, in the very language of Debtor's plan that Defendant itself drafted, it is clear that "With respect to the Lariat claim, Lariat is enjoined from collection activity against the Debtor unless there is a payment default to it under this Plan. If there is a payment default, Lariat shall file an affidavit with this court and the Debtor will be allowed three (3) business days to file a response." No such affidavit has been filed as of the date of this pleading, nor could it be given the fact that no payment default has occurred.

47. Despite the fact that no payment default has occurred, Defendant has recently begun to undertake significant collection efforts in regard to the judgment issued in the Fraudulent Transfer Action.

48. Among the recent collection actions taken by Defendant, are the following:

A. On May 22, 2020, Defendant issued subpoenas to both Debtor and Mr. Wigley for the production of documents in regard to collection efforts and further attempted to compel in-person depositions from both Debtor and Mr. Wigley.

B. On June 16, 2020, Defendant, with no prior notice to Debtor, served a Notice of Levy on Garnished Sums in regard to a bank account in which Debtor had an interest and collected approximately $4,794.60 in funds from that bank account. In the Writ of Execution dated June 12, 2020, endorsed by Defendant's counsel, and served by Defendant with the Notice of Levy on Garnished Sums, Defendant claimed that the amount owed to Defendant by Debtor was $1,305,448.53.

C. On July 17, 2020, Defendant noticed a motion before the District Court to be heard on August 14, 2020, in which Defendant requests the significant relief indicated in the proposed Order filed by Defendant, a true and correct copy of which is attached hereto as Exhibit B. Essentially, Defendant is requesting that Debtor be compelled, without

8

further collection efforts by Defendant, to present additional significant financial information and documentation, present her assets for Defendant's collection and liquidation, and also endure unrestrained questioning by Defendant and its counsel in regard to the location, turnover, and liquidation of assets.

### COUNT ONE – INJUNCTIVE RELIEF

49. Debtor reasserts all of the foregoing allegations.

50. Debtor requests that the Court grant injunctive relief enforcing the terms of the Plan, and barring Defendant from undertaking collection efforts until the pending appeals in both the state and federal courts have concluded.

51. There is a substantial probability that Debtor will succeed in at least one, and likely both, of the two pending appeals.

52. In the absence of injunctive relief, there is a substantial likelihood that Debtor will suffer irreparable injury, in part, as Defendant has sought an order that would result in liquidation of various irreplaceable pieces of personal property, including jewelry and artwork.

53. The potential harm to Debtor if injunctive relief is not granted substantially outweighs the potential harm to Defendant if injunctive relief is granted, in that there is no significant possibility that Debtor will be unable to satisfy any obligation to Defendant that may remain after the pending appeals have concluded.

54. It is in the public interest that the proposed injunction issue, because enforcement of the explicit terms of the confirmed Plan will best promote certainty in judicial proceedings and the bankruptcy process.

55. Based on the foregoing, Debtor requests entry of an order enjoining Defendant from taking any steps to enforce the Judgment against Debtor until the conclusion of all pending appeals.

## COUNT TWO – DECLARATORY RELIEF
### (Plan Interpretation)

56. Debtor reasserts all of the foregoing allegations.

57. A bona fide dispute has arisen between Debtor and Defendant regarding the interpretation of the Plan.

58. Debtor contends that Defendant's ongoing collection efforts are impermissible and unlawful pursuant to the terms of the Plan.

59. Debtor further contends that Defendant is failing to abide by the five percent (5.0%) interest rate charged under the Plan.

60. An actual controversy exists between Debtor and Defendant regarding interpretation of the Plan.

61. The controversy is substantial and concrete and touches the legal relations of parties with adverse interests and is subject to specific relief through a decree of conclusive character.

62. Debtor seeks declaratory relief pursuant to 28 U.S.C. §§ 2201-2202 and all supplemental relief that is available.

63. Based on the foregoing, Debtor requests entry of an order declaring that, pursuant to Section II(A)(1) of the Plan, Defendant is barred from pursuing collection efforts against Debtor until the conclusion of all pending appeals and must further abide by the interest rate established by the Plan.

## COUNT THREE – DECLARATORY RELIEF
### (Claim Calculation)

64. Debtor reasserts all of the foregoing allegations.

65. A bona fide dispute has arisen between Debtor and Defendant regarding the amount that remains owing to Defendant after properly accounting for payments already made to Defendant by Debtor and by Mr. Wigley.

66. Because Defendant specifically asserted its claim, as stated in its proof of claim against Mr. Wigley, on the basis of his obligations under the Guaranty *and* Mr. Wigley's liability under the judgment entered in the Fraudulent Transfer Action, the full amount of Mr. Wigley's payment under his confirmed plan must be credited towards his joint and several liability with Debtor under such judgment.

67. An actual controversy exists between Debtor and Defendant regarding application of the payment that Defendant received pursuant to Mr. Wigley's confirmed plan and the resulting amount, if any, that remains due to Defendant following the proper application of credit for all prior payments Defendant has received from both Debtor and Mr. Wigley.

68. The controversy is substantial and concrete and touches the legal relations of parties with adverse interests and is subject to specific relief through a decree of conclusive character.

69. Debtor seeks declaratory relief pursuant to 28 U.S.C. §§ 2201-2202 and all supplemental relief that is available.

70. Based on the foregoing, Debtor requests entry of an order declaring that the full amount of any payment that Mr. Wigley made pursuant to his confirmed plan shall be applied to the full liability toward satisfaction of the judgment entered in the Fraudulent Transfer Action.

Document     Page 12 of 12

WHEREFORE, Debtor respectfully requests that the Court enter judgment providing the following relief:

(A) Enjoining Defendant from taking any steps to collect on any indebtedness of Debtor until the conclusion of all appeals that are currently pending in either state or federal court;

(B) Declaring that, pursuant to the terms of the Plan, Defendant is barred from taking any steps to collect on any indebtedness of Debtor until the conclusion of all appeals that are currently pending in either state or federal court;

(C) Declaring that the full amount of any payment that Mr. Wigley made pursuant to his confirmed plan in Case No. 14-40541 shall be applied to Debtor's liability to Defendant;

(D) Declaring that the full amount paid to Lariat under Debtor's confirmed plan shall be applied to Defendant's judgment arising from the Fraudulent Transfer Action claim; and

(E) Granting such other relief as may be just and equitable.

Respectfully submitted,

**LAMEY LAW FIRM, P.A.**

Dated: July 28, 2020

John D. Lamey III, Atty ID: 0312009
Elaine D.W. Wise (#387871)
Attorneys for the Debtor
980 Inwood Ave N
Oakdale, MN 55128
651-209-3550 (o) / 651-789-2179 (f)